1   JAMES D. NGUYEN, CA BAR NO. 179370
    jnguyen@foley.com
2   **FOLEY & LARDNER LLP**
    2029 CENTURY PARK EAST, SUITE 3500
3   LOS ANGELES, CA 90067-3021
    TELEPHONE:    310.277.2223
    FACSIMILE:    310.557.8475
4
    Attorneys for Defendant COMMON SENSE ISSUES, INC.
5

6

7

8                  **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12   COMMON SENSE MEDIA, INC., a          Case No: 008-00155CW
     California corporation
13                                         Judge: Hon. Claudia Wilken
                  Plaintiff,
14                                         **DECLARATION OF HAROLD E.
          vs.                              SWIFT IN SUPPORT OF
15                                         DEFENDANT COMMON SENSE
     COMMON SENSE ISSUES, INC., a          ISSUES, INC'S OPPOSITION TO
16   Delaware corporation,                 PLAINTIFF'S *EX PARTE* MOTION
                                           FOR A TEMPORARY RESTRAINING
17                Defendant.               ORDER**

18

19

20

21

22

23

24

25

26

27

28

LACA_1086540.5

1    I, HAROLD E. SWIFT, declare as follows:

2    1.    I am the president of Common Sense Issues, Inc. ("Common Sense

3  Issues"), a Delaware corporation.  I make this declaration in connection with Defendant

4  Common Sense Issues' Opposition to Plaintiff Common Sense Media, Inc.'s *Ex Parte*

5  Application for a Temporary Restraining Order.  I have personal knowledge of the facts

6  contained herein.  If called upon to testify, I could and would competently testify thereto.

7    **THE COMMON SENSE ENTITIES**

8    2.    Common Sense Issues is a public information organization devoted to

9  promoting American values.  The organization is dedicated to building a national

10  movement of citizens who want public officials to exercise common sense in their

11  approach to the issues.  Common Sense Issues educates the public as to the positions of

12  leaders and  political candidates on a variety of issues of central importance to the

13  American people.  Some of Common Sense Issues' activities include telephone calls,

14  advertisements in newspaper, television, radio and internet, and operating web sites as a

15  means to communicate to the public information about key public policy and political

16  issues.  Common Sense Issues does not communicate or coordinate its efforts with

17  candidates, campaigns, or political parties.  Common Sense Issues conducts its activities

18  wholly independently of any and all candidates, campaigns and political parties.

19    3.    Common Sense Issues' predecessor in interest, Common Sense Ohio, was

20  established as a non-profit organization publicly registered under the laws of the State of

21  Ohio and has been publicly registered since 2006.

22    4.    Another Common Sense Issues' predecessor in interest is Common Sense

23  for the 21st Century, also publicly registered under the laws of the state of Ohio since

24  2006.

25    5.    Another Common Sense Issues affiliated organization is Common Sense

26  Issues Coalition, Inc., which was incorporated on April 11, 2007.  Attached as Exhibit 1

27  is a true and correct copy of the record from the State of Delaware, Secretary of State's

28

2

LACA_1086540.5

website, identifying this organization and its date of incorporation.

6. Common Sense Ohio, Common Sense for the 21st Century and Common Sense Issues Coalition together with Common Sense Issues comprise "the Common Sense Entities". Each is publicly registered under the laws of either the State of Ohio or the State of Delaware for a substantial period of time preceding the filing of the instant action.

7. The additional entities Common Sense Issues and Common Sense Issues Coalition were added to the Common Sense Entities in 2007 in order to broaden the scope of the organizational opportunities to other states, primarily small states where the voting records of members of Congress from those states fail to reflect the common sense values and principles of the citizens of those small states and to educate the citizens of those small states regarding the positions of their congressional delegations.

8. The Common Sense Entities adopted the COMMON SENSE ISSUES mark and other variations of the COMMON SENSE mark reflecting Thomas Paine's classic essay on American politics, *Common Sense*. Common Sense Issues is, as an organization, dedicated to the following model espoused in Paine's *Common Sense* essay, to-wit: "In the following pages I offer nothing more than simple facts, plain arguments, and common sense; and have no other preliminaries to settle with the reader, than that he will divest himself of prejudice and prepossession, and suffer his reason and his feelings to determine for themselves; that he will put on, or rather that he will not put off the true character of a man, and generously enlarge his views beyond the present day." Thomas Paine, pamphlets, COMMON SENSE (1776).

9. Common Sense Entities have been active in the public domain since 2006, engaging in public communications in various states since inception.

10. Common Sense Entities have filed various legal documents governing the activities of the Common Sense Entities including the State of Ohio (corporate filings and in legal proceedings in the judicial system of the State of Ohio), State of Delaware

3

1 (corporate filings), the Internal Revenue Service (Form 990 tax returns of exempt
2 organizations) and the Federal Election Commission (Form 5 Reports of Independent
3 Expenditures). All filings are public records and have been available to and known by
4 the public since the dates of filing, beginning in 2006 and continuing through the present
5 date. See Ex. 1 for a copy of *State ex rel. Ohio Democratic Party v. Blackwell*, 111 Ohio
6 St.3d 246, 2006-Ohio-5202 (2006).

7       11.    In the fall of 2006, the Common Sense Entities registered for and began
8 using Internet domain names that incorporated the "Common Sense" moniker with 49
9 different states' names (i.e. www.commonsensemontana.com). The Common Sense
10 Entities also registered domain names containing the combination of the "Common
11 Sense" moniker with the years 2006 through 2016 (i.e. www.commonsense2006.com), to
12 reflect timeliness in any given year.

13       12.    As a result of its public involvement and activities commencing in 2006,
14 the Common Sense Entities and now Common Sense Issues have received a significant
15 amount of attention and have generated news reports in numerous national newspapers,
16 including the *New York Times*, the *Washington Post*, the *Wall Street Journal*, *Newsweek*,
17 as well as various other internet articles, cable and other television news programs.

18       13.    Common Sense Ohio garnered a great deal of media attention for its
19 involvement in a legal action in Ohio from 2006 through 2007, in which the Ohio
20 Democratic Party filed a writ of mandamus to compel the Ohio Secretary of State to
21 require COMMON SENSE OHIO to comply with certain campaign finance provisions, a
22 proceeding in which the Ohio Democratic Party was unsuccessful. Common Sense Ohio
23 prevailed in the litigation and all pleadings were filed publicly of record during the
24 pendency of the action. Attached as <u>Exhibit 3</u> is a true and correct copy of the decision in
25 *State ex rel. Ohio Democratic Party v. Blackwell*, 111 Ohio St.3d 246 (Ohio 2006).

26               **THE "COMMON SENSE ISSUES" MARK**

27       14.    Reflecting a refinement in scope and strategy after the 2006 elections,

28

4

LACA_1086540.5

1  Common Sense Issues was incorporated as a not for profit social welfare organization in

2  Delaware on April 11, 2007. Attached as Exhibit 2 is a true and correct copy of the

3  record from the State of Delaware, Secretary of State's website, identifying this

4  organization and its date of incorporation. The COMMON SENSE ISSUES mark has

5  been used since at least as early as April 2007.

6      15.    In August 2007, Common Sense Issues applied for a United States

7  trademark registration for the COMMON SENSE ISSUES mark. The application has

8  been approved by the United States Patent and Trademark Office Examiner and is in line

9  for publication.

10     16.    In adopting the COMMON SENSE ISSUES mark, Common Sense Issues

11  had no reason or intention of trading on Plaintiff's COMMON SENSE MEDIA mark.

12  Common Sense Issues has no reason to want to be linked to Plaintiff or to trade or benefit

13  from any goodwill associated with Plaintiff's COMMON SENSE MEDIA marks. The

14  Common Sense Entities do not engage in similar services or activities as Common Sense

15  Media which is apparently to provide parents with ratings of media and entertainment.

16  Common Sense Entities have no plans or intention of providing such services.

17     17.    Despite the considerable amount of press attention to and about the

18  Common Sense Entities since 2006, I am not aware of a single instance of actual

19  confusion between Plaintiff's COMMON SENSE MEDIA marks and the mark of

20  Commons Sense Entities including specifically the COMMON SENSE ISSUES mark.

21     18.    Common Sense Issues believes its COMMON SENSE ISSUES name and

22  mark is distinct from, and not confusingly similar to, Plaintiff's marks such that there is

23  little risk of likelihood of confusion among relevant consumers.

24     19.    Before receiving a cease and desist letter from Plaintiff in late December of

25  2007, the Common Sense Entities were not aware of any complaints or challenges on the

26  part of Plaintiff about Common Sense Entities' use of the COMMON SENSE ISSUES

27  mark or other variations of the COMMON SENSE mark.

28

5

LACA_1086540.5

1    20.    I am aware of the phrase "Common Sense" being used in the names of

2  many other organizations, both for profit and not for profit entities, and is found in

3  numerous forms, versions and formats having nothing to do with either of the Parties to

4  these proceedings.

5    21.    I am not aware of a single activity or event, scheduled or promoted by

6  Common Sense Issues, which would run counter to or compete with Plaintiff's scheduled

7  activities, as set forth in its moving papers, to justify the need for immediate relief or a

8  temporary restraining order.

9  ### HARM TO COMMON SENSE ISSUES IF A TRO WERE TO ISSUE

10    22.    Over the course of the last two years, the Common Sense Entities have

11  expended approximately $5 million into promoting its movement with key donors,

12  media, supporters, potential supporters of its message and advocacy efforts.  In addition

13  to monetary contributions, professionals and supporters have donated thousands of hours

14  of time and energy to the Common Sense Entities and their activities.  These activities

15  have all been done under the COMMON SENSE ISSUES and related COMMON

16  SENSE marks, with considerable public attention to which Common Sense Media has

17  had ample time to respond or comment.  A change from these established marks

18  would result in unrecoverable loss of the equity built with the public, supporters and

19  donors as a result of these expenditures, as well as the attention garnered from millions

20  of impressions from national media coverage.

21    23.    Common Sense Issues is diligent about operating in a manner that complies

22  with all applicable federal and state law and to conduct its activities in as transparent a

23  manner as possible, and to publicly disclose all activities, sources of contributions and

24  expenditures as required by federal and/or state law and to further insure that there is no

25  confusion about the organization, its purpose and goals, what it stands for and what

26  supporters and members can accomplish by participating with Common Sense Issues.

27    24.    An order forcing Common Sense Entities and, in particular Common Sense

28

6

LACA_1086540.5

dedication to transparency and openness in its operations. In the world of political journalism where conservative issue organizations such as Common Sense Issues are subject to heightened press scrutiny and *ad hominem* attacks by working journalists who largely disagree philosophically with the organization, the inference that Common Sense Issues would attempt to disguise itself or the source of its activities would be severally injurious to its reputation and goodwill and would run counter to its mission of openness and inclusion.

25.     Common Sense Issues has filed in 2007, and is obligated to continue to file, during 2008, reports with the Federal Election Commission detailing certain expenditures by and contributions to Common Sense Issues. A change in the name of the organization would result in confusion to the public and possible repercussions legally from the Federal Election Commission if the same organization files cumulative reports of aggregate expenditures under totally different names.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  18  day of January, 2008 at *Cincinnati, Ohio*

*H. E. Swift*
HAROLD E. SWIFT

7

# EXHIBIT 1

# State of Delaware
## The Official Website for the First State

Delaware
It's good
being first.
THE FIRST STATE

| Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites |

| State Directory | Help | Search Delaware | | Citizen Services | Business Services | Visitor Info |

**Department of State: Division of Corporations**

### HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

### SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

### INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions    View Search Results

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 4332548 | Incorporation Date / Formation Date: | 04/11/2007 (mm/dd/yyyy) |
| Entity Name: | COMMON SENSE ISSUES COALITION, INC. | | |
| Entity Kind: | CORPORATION | Entity Type: | NON-PROFIT OR RELIGIOUS |
| Residency: | DOMESTIC | State: | DE |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information  [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT 2

# State of Delaware
## The Official Website for the First State

Delaware
It's good
being first.

| Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Local Sites |

| State Directory | Help | Search Delaware | GO | Citizen Services | Business Services | Visitor Info |

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions    View Search Results

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| File Number: | 4332532 | Incorporation Date / Formation Date: | 04/11/2007 (mm/dd/yyyy) |
| Entity Name: | COMMON SENSE ISSUES, INC. | | |
| Entity Kind: | CORPORATION | Entity Type: | NON-PROFIT OR RELIGIOUS |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information   [Submit]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

# EXHIBIT 3

111 Ohio St. 3d 246, *; 2006 Ohio 5202, **;
855 N.E.2d 1188, ***; 2006 Ohio LEXIS 2656

THE STATE EX REL. **OHIO DEMOCRATIC PARTY** v. **BLACKWELL,** SECY. OF STATE.

No. 2006-1678

SUPREME COURT OF OHIO

111 Ohio St. 3d 246; 2006 Ohio 5202; 855 N.E.2d 1188; 2006 Ohio LEXIS 2656

September 25, 2006, Submitted
October 3, 2006, Decided

**PRIOR HISTORY:**
State ex rel. Ohio Democratic Party v. Blackwell, 2006 Ohio 4702, 2006 Ohio LEXIS 2616 (Ohio, Sept. 12, 2006)

**DISPOSITION:** Cause dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an expedited election case, relator political party sought a writ of mandamus to compel respondent Secretary of State to inform a political organization that its electioneering disclosure statements were inaccurate and incomplete, under R.C. §§ 3517.11 and 3517.1011.

**OVERVIEW:** The party said the organization's failure to reveal contributors to the provider of the organization's funds violated R.C. §§ 3517.11 and 3517.1011. The supreme court held the Ohio Elections Commission had exclusive jurisdiction over such claims, and nothing barred a complaint against the Secretary of State in the Elections Commission. The case did not involve a rule letting the supreme court refuse to hear an otherwise viable original mandamus action, so Ohio Const. art. IV, § 2(B)(3) was not violated. The general assembly could require that alleged violations of the newly created rights in R.C. §§ 3517.1011 and 3517.11 be pursued in the Ohio Elections Commission. A claim that Elections Commission relief was inadequate failed for the supreme court's manifest lack of jurisdiction. The party sought disclosure of contributors' identities, but, had the writ been issued, they would not have been disclosed, so the Secretary would have filed a complaint in the Elections Commission, and the party would have been in no better position than had it filed a complaint in the Elections Commission, making this remedy adequate, and mandamus would not achieve the party's goal.

**OUTCOME:** The party's petition was dismissed.

**CORE TERMS:** elections commission, mandamus, election, original jurisdiction, mandamus actions, exclusive original jurisdiction, failures to act, contributor, exclusive jurisdiction, exclusive jurisdiction, common pleas, campaign, writ of mandamus, adequate remedy, electioneering-communications, advertisement, injunction, disclosure statements, candidate, entity, donor, extraordinary writ, declaratory, disclosure, television, disclose, tribunal, speedy, election laws, writ of prohibition

**LEXISNEXIS(R) HEADNOTES**
Governments > State & Territorial Governments > Elections
*HN1* ⊕ Ohio Rev. Code Ann. § 3517.1011(D) requires persons and entities financing certain election advertisements to disclose all contributors whose contributions totaled $ 200 or more to fund those advertisements.

Governments > State & Territorial Governments > Elections
*HN2* ⊕ The Ohio Elections Commission has exclusive jurisdiction over acts and failures to act, under R.C. §§ 3517.151 and 3517.153, regarding the filing of complaints with the

Commission.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

*HN3* "Jurisdiction" means a court's statutory or constitutional power to adjudicate a case. Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits. It is a condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.

Governments > State & Territorial Governments > Elections

*HN4* R.C. § 3517.151(A) expressly provides that complaints with respect to acts or failures to act under the sections listed in R.C. § 3517.153(A) shall be filed with the Ohio elections commission. R.C. § 3517.153(A) provides for filing a complaint with the commission for violations of R.C. §§ 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20 to 3517.22, 3599.03, or 3599.031.

Governments > Legislation > Interpretation

*HN5* In construing statutory provisions, a court's paramount concern is legislative intent. To determine this intent, the court reads words and phrases in context and in accordance with the rules of grammar and common usage.

Governments > Legislation > Interpretation
Governments > State & Territorial Governments > Elections
Governments > State & Territorial Governments > Employees & Officials

*HN6* R.C. § 3517.151(A) broadly applies to complaints concerning "acts or failures to act" under the election provisions specified in R.C. § 3517.153(A). There is no limitation in these statutes that prevents any person from filing a complaint against public officials, including the Secretary of State, alleging that they violated the specified election provisions. And an implied limitation will not be read into the statute. Statutes written in broad, sweeping language should be given broad, sweeping application.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Governments > State & Territorial Governments > Elections

*HN7* R.C. § 3517.151(A) confers exclusive jurisdiction over complaints with respect to acts or failures to act under specified provisions on the Ohio Elections Commission: these complaints "shall be filed with the Ohio elections commission." The word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that it receive a construction other than its ordinary usage. The "shall" in R.C. § 3517.151(A) plainly requires mandatory construction. Had the general assembly intended to authorize other tribunals or courts to exercise the initial jurisdiction to consider "acts or failures to act under" the specified sections of R.C. 3517.01 et seq., it would have so provided, but it did not. Instead, the general assembly employed broad, sweeping language to confer the exclusive initial jurisdiction to consider these alleged violations on the Ohio Elections Commission. Jurisdiction is conferred on courts in these matters only after the Commission has rendered a final determination. R.C. § 3517.157(D).

Governments > State & Territorial Governments > Elections

*HN8* R.C. § 3517.151(A) expressly provides that complaints with respect to acts or failures to act under the sections listed in R.C. § 3517.153(A) shall be filed with the Ohio elections commission. R.C. § 3517.153(A) provides for filing a complaint with the commission for violations of R.C. §§ 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20 to 3517.22, 3599.03, or 3599.031. R.C. § 3517.21(B) forbids persons, during any campaign for nomination or election to public office, by means of television advertisement, to knowingly and with intent to affect the outcome of the campaign post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.

Administrative Law > Agency Adjudication > Decisions > General Overview

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction
Governments > Legislation > Interpretation

HN9⭨ When the general assembly intends to vest exclusive jurisdiction in a court or agency, it provides it by appropriate statutory language.

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview
Governments > State & Territorial Governments > Elections

HN10⭨ The purpose of Ohio Const. art. IV, § 2(B)(3), precluding any law or rule from preventing any person from invoking the original jurisdiction of the Ohio Supreme Court, is not contravened by vesting exclusive original jurisdiction over claims related to certain election provisions in the Ohio Elections Commission, as no rule giving the Ohio Supreme Court permission to refuse to consider an otherwise viable original action in mandamus is involved.

Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus
Civil Procedure > Appeals > Appellate Jurisdiction > General Overview
Governments > State & Territorial Governments > Elections

HN11⭨ Nothing in Ohio Const. art. IV, § 2(B)(1) and (3), and cases construing those provisions, justifies holding that the Ohio Supreme Court retains jurisdiction over claimed violations of R.C. §§ 3517.1011 and 3517.11 notwithstanding the Ohio elections commission's exclusive original jurisdiction over these violations. There is also no existing precedent recognizing mandamus as an appropriate remedy for these alleged violations.

Governments > State & Territorial Governments > Elections

HN12⭨ At the time provisions of R.C. §§ 3517.1011 and 3517.11, regarding disbursements for electioneering communications and statements of receipts and expenditures, were enacted by the general assembly, no comparable common-law rights existed. The general assembly thus created these rights and specified that complaints regarding all acts or failures to act under the specified provisions be filed with the Ohio Elections Commission, which is a bipartisan tribunal of seven members. R.C. § 3517.152.

Governments > Legislation > Interpretation
Governments > Legislation > Statutory Remedies & Rights

HN13⭨ If the general assembly has provided a remedy for the enforcement of a specific new right, a court may not on its own initiative apply another remedy it deems appropriate. In other words, where the general assembly by statute creates a new right and at the same time prescribes remedies or penalties for its violation, the courts may not intervene and create an additional remedy.

Administrative Law > Judicial Review > Reviewability > Jurisdiction & Venue
Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus
Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

HN14⭨ Courts that have general constitutional jurisdiction in mandamus, e.g., courts of appeals -- Ohio Const. art. IV, § 3(B)(1)(b) -- patently and unambiguously lack jurisdiction over mandamus claims concerning matters that are vested in the exclusive original jurisdiction of another tribunal.

Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus

HN15⭨ Mandamus is not available where there is an adequate remedy in the ordinary course of law. R.C. § 2731.05. In order to constitute an adequate remedy, the alternative must be complete, beneficial, and speedy.

Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus

HN16⭨ It is well established that mandamus will not issue to compel a vain act.

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Appeals > Appellate Jurisdiction > General Overview
Governments > State & Territorial Governments > Elections

HN17 ⊥ Because the general assembly has vested exclusive original jurisdiction over complaints concerning acts or failures to act under R.C. §§ 3517.1011 and 3517.11 in the Ohio Elections Commission, courts lack jurisdiction to consider claims alleging such acts or failures to act, regardless whether the action is in declaratory judgment and injunction or in mandamus. In other words, the general assembly has established the rights and duties as specified in these election provisions, and in these circumstances, it has further chosen to confer the Ohio Elections Commission with the exclusive original jurisdiction to determine whether there has been a violation of those provisions.

Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions
Governments > State & Territorial Governments > Elections
HN18 ⊥ The Ohio Supreme Court will not issue advisory opinions, a rule that applies equally to election cases. This conclusion is consistent with the cardinal principal of judicial restraint - if it is not necessary to decide more, it is necessary not to decide more.

## HEADNOTES

*Original action for writ of mandamus to compel Secretary of State to inform electioneering-communications entity to comply with R.C. 3517.1011 by disclosing all contributors who gave $ 200 or more to fund political advertisements -- Ohio Elections Commission has exclusive original jurisdiction to determine whether R.C. 3517.1011 and 3517.11 have been violated -- Cause dismissed.*

**COUNSEL:** Porter, Wright, Morris & Arthur, L.L.P., Scott E. North, Kathleen M. Trafford, Ralph F. Gildehaus III, Julie L. Atchison, and L. Bradfield Hughes, for relator.

Langdon & Hartman, L.L.C., David R. Langdon, Curt C. Hartman, and Joshua B. Bolinger; Jim Petro, Attorney General, and Sharon A. Jennings and Richard N. Coglianese, Assistant Attorneys General, for respondent.

**JUDGES:** LUNDBERG STRATTON and LANZINGER, JJ., concur. MOYER, C.J., and O'CONNOR, J., concur in judgment. RESNICK, PFEIFER and O'DONNELL, JJ., dissent.

## OPINION

[*246]  [***1190]  IN MANDAMUS.

**Per Curiam.**

**[**P1]**  This is an expedited election case in mandamus to compel the Secretary of State to perform certain acts allegedly required by Ohio's Campaign Finance Law. Because we lack subject-matter jurisdiction to determine in an original  [*247]  action whether the specified campaign-finance-law provisions have been violated, we dismiss the cause.

**[**P2]**  On September 7, 2006, relator, Ohio Democratic Party, filed this action for a writ of mandamus to compel respondent, Ohio Secretary of State J. Kenneth Blackwell, to (1) "inform Common Sense 2006 that its electioneering communication disclosure statements are inaccurate and incomplete, due to their failure, inter alia, to disclose the identities of Common Sense Ohio's contributors" and (2) "require Common Sense Ohio and Common Sense 2006 to timely file a complete and accurate supplemental or amended electioneering communication disclosure statement disclosing all information required by law (pursuant to R.C. 3517.1011(D)(1) and (2)) regarding the contributors to Common Sense Ohio whose contributions were used to produce  [***1191]  electioneering communications placed by Common Sense 2006."

**[**P3]**  Relator claims that the Secretary failed to order Common Sense 2006, an electioneering-communications entity, to comply with HN1⊥ R.C. 3517.1011(D), which requires persons and entities financing certain election advertisements to disclose all contributors whose contributions totaled $

200 or more to fund those advertisements. Relator alleges that Common Sense 2006, which engaged in campaign advertising regarding the 2006 gubernatorial campaign, erroneously listed Common Sense Ohio, an Ohio nonprofit corporation, as its only donor of the $ 1,537,000 that Common Sense 2006 allegedly used to pay for the advertisements. According to relator, Common Sense 2006 is required to disclose the identities of persons who contributed $ 200 or more to Common Sense Ohio.

**[\*\*P4]** On September 12, 2006, we stayed discovery and the filing of merit briefs and evidence pursuant to S.Ct.Prac.R. X(9) and ordered the parties to brief the following jurisdictional issue:

**[\*\*P5]** "Does the court have jurisdiction in this expedited election case to issue a writ of mandamus in light of the fact that *HN2*the Ohio Elections Commission has exclusive jurisdiction over acts and failures to act under R.C. 3517.151 and 3517.153? See *State ex rel. Taft-O'Connor '98 v. Franklin Cty. Court of Common Pleas* (1998), 83 Ohio St.3d 487, 1998 Ohio 500, 700 N.E.2d 1232." 111 Ohio St. 3d 1201, 2006 Ohio 4703, 854 N.E.2d 1081.

**[\*\*P6]** In accordance with our order, the parties filed briefs on this issue on September 19 and 22.

**[\*\*P7]** This cause is now before the court for our consideration of the jurisdictional question.

Jurisdiction, In General

**[\*\*P8]** *HN3*"'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.'" *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004 Ohio 1980, 806 **[\*248]** N.E.2d 992, P 11, quoting *Steel Co. v. Citizens for a Better Environment* (1998), 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210. "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 87, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. "It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" *Pratts,* at P 11, quoting *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 75, 1998 Ohio 275, 701 N.E.2d 1002.

Jurisdiction Over Acts or Failures to Act Under R.C. 3517.151(A) and 3517.153(A)

**[\*\*P9]** Relator's mandamus claim is premised on its allegations that Common Sense Ohio and Common Sense 2006 are so interrelated that they constitute the same entity and that they thus violated R.C. 3517.1011 by filing an inaccurate and incomplete electioneering-communications disclosure statement by not listing the names of all contributors to Common Sense Ohio who donated $ 200 or more, money that was then passed to Common Sense 2006 to purchase television and radio advertisements concerning the 2006 gubernatorial race.

**[\*\*P10]** *HN4*R.C. 3517.151(A) expressly provides that "complaints with respect to acts or failures to act under the sections listed in division (A) of section 3517.153 of the Revised Code *shall be filed with the Ohio elections commission.*" (Emphasis added.) R.C. 3517.153(A) provides for filing a complaint **[\*\*\*1192]** with the commission for violations of R.C. 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20 to 3517.22, 3599.03, or 3599.031.

**[\*\*P11]** Relator complains about the following alleged violations of R.C. Chapter 3517: (1) Common Sense 2006 violated R.C. 3517.1011(D) by not disclosing the identities of contributors who donated $ 200 or more of the $ 1,537,500 donated by Common Sense Ohio to fund the election advertising; (2) the Secretary violated R.C. 3517.11(B)(3)(a) by failing to notify Common Sense 2006 that its electioneering-communications disclosure statement was incomplete and inaccurate; and (3) the Secretary violated R.C. 3517.1011(D)(3) by failing to require Common Sense 2006 to timely file a complete and accurate supplemental or amended electioneering-communications disclosure statement.

**[\*\*P12]** These claimed violations of the electioneering-communications-disclosure-statement provisions of R.C. 3517.11 and 3517.1011 are within the specified sections listed in R.C. 3517.153 (A), i.e., "sections 3517.08 to 3517.13."

**[\*\*P13]** *HN5*In construing these statutory provisions, the court's paramount concern is

legislative intent. *State ex rel. Musial v. N. Olmsted,* 106 Ohio St.3d 459, 2005 Ohio 5521, 835 N.E.2d 1243, P 23. To determine this intent, we read words and **[*249]** phrases in context and in accordance with the rules of grammar and common usage. *State ex rel. Russo v. McDonnell,* 110 Ohio St.3d 144, 2006 Ohio 3459, 852 N.E.2d 145, P 37.

**[**P14]** Relator asserts that under these provisions, it could not file a complaint with the Ohio Elections Commission against the Secretary because the commission's jurisdiction is restricted to complaints against persons and entities who must comply with the election laws, not the public officials who must enforce the election laws. *HN6* R.C. 3517.151(A), however, broadly applies to complaints concerning "acts or failures to act" under the election provisions specified in R.C. 3517.153(A). There is no limitation in these statutes that prevents any person from filing a complaint against public officials, including the Secretary, alleging that they violated the specified election provisions. And we will not read an implied limitation into the statute. As United States Supreme Court Chief Justice John G. Roberts Jr. previously observed in a unanimous opinion for the United States Court of Appeals for the District of Columbia Circuit, "the Supreme Court has consistently instructed that statutes written in broad, sweeping language should be given broad, sweeping application." *Consumer Electronics Assn. v. Fed. Communications Comm.* (C.A.D.C.2003), 358 U.S. App. D.C. 180, 347 F.3d 291, 298.

**[**P15]** *HN7* R.C. 3517.151(A) then confers exclusive jurisdiction over complaints with respect to acts or failures to act under the specified provisions on the Ohio Elections Commission: these complaints "*shall* be filed with the Ohio elections commission." (Emphasis added.) "'[T]he word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.'" (Brackets sic.) *Ohio Civil Rights Comm. v. Countrywide Home Loans, Inc.,* 99 Ohio St.3d 522, 2003 Ohio 4358, 794 N.E.2d 56, P 4, quoting *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. The "shall" in R.C. 3517.151(A) plainly requires mandatory construction.

**[**P16]** Had the General Assembly intended to authorize other tribunals or courts to exercise the initial jurisdiction to consider "acts or failures to act under" the specified sections of R.C. Chapter 3517, it **[***1193]** would have so provided, but it did not. Instead, the General Assembly employed broad, sweeping language to confer the exclusive initial jurisdiction to consider these alleged violations on the Ohio Elections Commission. Jurisdiction is conferred on courts in these matters only after the commission has rendered a final determination. R.C. 3517.157(D) ("A party adversely affected by a final determination of the commission may appeal from the determination under section 119.12 of the Revised Code").

*Taft-O'Connor '98*

**[**P17]** This result is supported by precedent. In *State ex rel. Taft-O'Connor '98 v. Franklin Cty. Court of Common Pleas* (1998), 83 Ohio St.3d 487, 700 **[*250]** N.E.2d 1232, Friends of Fisher, a campaign committee for the November 3, 1998 gubernatorial election, filed an action for declaratory and injunctive relief in the Franklin County Court of Common Pleas. Friends of Fisher sought a judgment declaring to be false and fraudulent a television commercial aired by Taft-O'Connor '98, a campaign committee whose candidates were the opponents of the candidates of Friends of Fisher, and also requested an injunction prohibiting Taft-O'Connor '98 and its candidates and agents from broadcasting the advertisement. The common pleas court granted a temporary injunction, and Taft-O'Connor '98 filed an action in this court for writs of mandamus and prohibition to vacate the injunction and dismiss the common pleas court case.

**[**P18]** We granted a writ of prohibition, holding that the Ohio Elections Commission has exclusive jurisdiction over the claims raised in the common pleas court case because of R.C. 3517.151(A) and 3517.153(A):

**[**P19]** "Relator contends, among other things, that Judge Connor had no jurisdiction to enter the restraining order in *Friends of Fisher* and has no jurisdiction to take any other action in that matter because the Ohio Elections Commission has exclusive jurisdiction over the claims raised in that litigation. We agree.

**[**P20]** "The Ohio Elections Commission has exclusive jurisdiction over the claims of fraudulent and false statements raised by Friends of Fisher in the underlying action. *HN8* R.C. 3517.151(A)

express' provides that 'complaints with respect to acts or failures to act under the sections listed in division A of section 3517.153 of the Revised Code *shall be filed with the Ohio elections commission * * *.*' (Emphasis added.) R.C. 3517.153(A) provides for filing a complaint with the commission for violations of R.C. 3517.08 to 3517.13, 3517.17, 3517.18, 3517.20 to 3517.22, 3599.03, or 3599.031. R.C. 3517.21(B) forbids persons, during any campaign for nomination or election to public office, by means of television advertisement, to knowingly and with intent to affect the outcome of the campaign '[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.'"

[**P21]   "Additionally, actions for declaratory judgment and injunction are generally considered to be inappropriate where, as here, special statutory proceedings would be bypassed. See, generally, *State ex rel. Albright v. Delaware Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 40, 42, 572 N.E.2d 1387, 1389. By filing a declaratory judgment and injunction action in the common pleas court, plaintiff in *Friends of Fisher* bypassed the mandatory statutory [***1194] procedure provided by R.C. Chapter 3517 for the filing of complaints with the Ohio [*251] Elections Commission. Thus, in *Friends of Fisher,* the respondents had no jurisdiction to resolve matters committed to special statutory proceedings, the lack of jurisdiction is patent and unambiguous, and an extraordinary writ will therefore issue." Id., 83 Ohio St.3d at 488-489, 700 N.E.2d 1232.

[**P22]   Subsequently, in *State ex rel. Banc One Corp. v. Walker* (1999), 86 Ohio St.3d 169, 171-172, 1999 Ohio 151, 712 N.E.2d 742, a unanimous opinion, we cited *Taft-O'Connor '98* in support of the statement HN9 "When the General Assembly intends to vest exclusive jurisdiction in a court or agency, it provides it by appropriate statutory language."

[**P23]   Here, as in *Taft-O'Connor '98,* the Ohio Elections Commission has exclusive jurisdiction over the claims raised concerning the electioneering-communications-disclosure-statement provisions of R.C. 3517.1011 and 3517.11. Relator cannot bypass the special statutory procedures provided by R.C. Chapter 3517 by filing a court action alleging violations of these provisions.

Constitutional Jurisdiction in Mandamus

[**P24]   Relator asserts that even if R.C. 3517.151(A) and 3517.153(A) generally vest exclusive jurisdiction in the elections commission over claims alleging violations of the pertinent election statutes, these statutes do not bar this court's constitutional jurisdiction in mandamus.

[**P25]   "Under Section 2(B)(1)(b), Article IV of the Ohio Constitution, the Supreme Court of Ohio has original jurisdiction in mandamus actions, and pursuant to Section 2(B)(3), Article IV, '[n]o law shall be passed or rule made whereby any person shall be prevented from invoking the original jurisdiction of the supreme court.'" *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.* (2000), 90 Ohio St.3d 55, 59, 2000 Ohio 13, 734 N.E.2d 811. "Statutes * * * 'should not be construed as controlling the exercise of original jurisdiction in [extraordinary writ actions] constitutionally granted to courts of appeals and this court.'" Id. at 60, 734 N.E.2d 811, quoting *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 593, 1994 Ohio 208, 635 N.E.2d 26.

[**P26]   Relator relies on Section 2(B)(3), Article IV, *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, and *Wilke* to support its claim that R.C. 3517.151(A) and 3517.153(A) do not require the dismissal of this mandamus action for lack of jurisdiction. For the reasons that follow, however, these authorities are not controlling in this case.

[**P27]   First, Section 2(B)(3), Article IV of the Ohio Constitution is inapplicable. Section 2(B)(3) precludes any law or rule from preventing any person "from invoking the original jurisdiction of the supreme court." "Prior to 1913, the Supreme Court had the discretion to decline to exercise its original jurisdiction [*252] over extraordinary writs." *Hughes v. Scaffide* (1978), 53 Ohio St.2d 85, 88-89, 7 O.O.3d 175, 372 N.E.2d 598; see, also, *State ex rel. Werden v. Williams* (1875), 26 Ohio St. 170. "This court reasoned that, absent a showing of special circumstances, lower courts were more appropriate and convenient tribunals in which to determine whether extraordinary writs should issue." *Hughes,* 53 Ohio St.2d at 89, 7 O.O.3d 175, 372 N.E.2d 598.

[**P28]   Under this rule, "an action in mandamus could not be filed originally in this court without the court's permission, for the reason that 'it can more speedily and conveniently be heard in the

141, 228 N.E.2d 631, quoting *Werden*, 26 Ohio St. 170. Parties seeking to [***1195] file a mandamus action in the Supreme Court were thus required to seek leave to file the petition. *State ex rel. Toledo v. Lynch* (1913), 87 Ohio St. 444, 445-446, 101 N.E. 352, 10 Ohio L. Rep. 612 (application for leave to file mandamus action "is consonant with a practice long since established and consistently adhered to in this court to require leave to file petitions invoking the exercise of its original jurisdiction upon any of the subjects within that jurisdiction").

[**P29] The sentence now contained in Section 2(B)(3), Article IV of the Ohio Constitution was proposed by the 1912 Constitutional Convention and adopted by the Ohio electorate, effective January 1, 1913. *Pressley*, 11 Ohio St.2d at 145, 40 O.O.2d 141, 228 N.E.2d 631. The debates at the Constitutional Convention of 1912 indicate that the intent of the delegate proposing the amendment was to end the Supreme Court's practice of requiring leave of court before bringing an action for an extraordinary writ in the court:

[**P30] "The supreme court has very little original jurisdiction. It is fair to assume that the purpose in giving the supreme court this original jurisdiction was for the benefit of the litigant and not for the benefit of the court. The supreme court has been laboring with congested dockets and for a number of years has required anyone seeking to invade the jurisdiction to first get the consent of the court to file his appeal. The result has been *in quo warranto and mandamus and other cases in which original jurisdiction is invoked, the court has required suitors to go to the circuit court.* One result has been that in many cases brought by the attorney general he has been required to go to the circuit court of Franklin county. This has, therefore, added largely to the work of this circuit, and after all it has not put on the supreme court any considerable amount of work because cases of that kind generally wind up in the court of final resort. We have taken from the supreme court one-half or more of all its jurisdiction when we have secured a ratification of the Peck proposal, and that being so *there is no longer any reason why the supreme court cannot exercise the jurisdiction* [*253] *conferred upon it by this amendment to the constitution.*" (Emphasis added.) 2 Proceedings and Debates of the Constitutional Convention (1912) 1831.

[**P31] "From this it would appear that the purpose of the amendment was to end the procedural discretion then being exercised by the supreme court." Note, Constitutional Law--Refusal to Take Jurisdiction on a Writ of Mandamus (1954), 15 Ohio St.L.J. 474, 476. Consistent with this purpose, we held that our previous practice was invalid because the constitutional amendment to Section 2, Article IV "will not permit this court either to adopt or adhere to a rule which requires permission to invoke the exercise of its original jurisdiction." *Toledo*, 87 Ohio St. at 449, 101 N.E. 352.

[**P32] This case, however, has nothing to do with a rule by which this court or the General Assembly has given permission to this court to refuse to consider an otherwise viable original action in mandamus. Therefore, $^{HN10}$ the purpose of Section 2(B)(3), Article IV of the Ohio Constitution is not contravened by vesting exclusive original jurisdiction over claims related to certain election provisions in the Ohio Elections Commission.

[**P33] Second, *Pressley* is similarly distinguishable. In that case, the court merely held that pursuant to *Toledo*, 87 Ohio St. 444, 101 N.E. 352, 10 Ohio L. Rep. 612, "it is now the settled law that it is not constitutionally permissible for this court to make a rule that it will not exercise jurisdiction in a mandamus action, filed originally in this court, *on the* [***1196] *ground that statutory mandamus is available in the Common Pleas Court*." (Emphasis added.) *Pressley*, 11 Ohio St.2d at 147, 40 O.O.2d 141, 228 N.E.2d 631. Such a rule would be comparable to the previous Supreme Court practice requiring that persons seek leave to invoke the original jurisdiction of the court in extraordinary-writ actions, which led to the 1913 amendment now found in Section 2(B)(3), Article IV of the Ohio Constitution barring this practice. Again, no such rule or statute is at issue here.

[**P34] Third, *Wilke* does not support relator's contention. The statute that we noted was constitutionally invalid under Sections 2(B)(1)(b) and 2(B)(3), Article IV of the Ohio Constitution in *Wilke* recognized the right of a probate judge who disagreed with the amount appropriated for the court by the county board of commissioners to file a mandamus action, but improperly limited that right to a mandamus action in *the court of appeals*. See R.C. 2101.11(B); *Wilke*, 90 Ohio St.3d at 59-60, 734 N.E.2d 811. In essence, this statute is comparable to the invalid court practice at issue in *Toledo* and the statute in *Pressley*, which, in effect, required persons to file writ actions in lower courts instead of in the Supreme Court. Further, in *Wilke*, we emphasized that the specific claim

therein--compensation for the reasonable and necessary expenses of the common pleas court and its divisions--was one for which mandamus had previously been recognized to be appropriate. Id., 90 Ohio St.3d at 60, 734 N.E.2d 811. More **[*254]** important, because the respondents in *Wilke* did not claim that R.C. 2101.11(B)(2) required that the judge file his mandamus action in the court of appeals rather than the Supreme Court, all of the discussion in that case cited by relator in support of its claim in this case is dicta. See *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 147, 1997 Ohio 350, 684 N.E.2d 1228 (party in writ case erroneously relied on dicta from prior case, which was unnecessary to the court's holding in that case).

**[**P35]** Therefore, *HN11*⊕nothing in Sections 2(B)(1) and 2(B)(3), Article IV of the Ohio Constitution and cases like *Wilke* and *Pressley* construing those provisions justifies holding that this court retains jurisdiction over the claimed violations of R.C. 3517.1011 and 3517.11 notwithstanding the elections commission's exclusive original jurisdiction over these violations. None of the cases cited by relator involve a situation comparable to that before the court, i.e., where a tribunal has exclusive original jurisdiction over the subject matter of the claimed violations. There is also no existing precedent recognizing mandamus as an appropriate remedy for these alleged violations.

Exclusive Jurisdiction Prevents Judicial Intervention

**[**P36]** *HN12*⊕At the time the pertinent provisions of R.C. 3517.1011 and 3517.11 were enacted by the General Assembly, it appears that no comparable common-law rights existed. The General Assembly thus created these rights and specified that complaints regarding all acts or failures to act under the specified provisions be filed with the Ohio Elections Commission, which is a bipartisan tribunal of seven members. R.C. 3517.152.

**[**P37]** *HN13*⊕"'If the General Assembly has provided a remedy for the enforcement of a specific new right, a court may not on its own initiative apply another remedy it deems appropriate.'" *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, quoting *Fletcher v. Coney Island, Inc.* (1956), 165 Ohio St. 150, 155, 59 O.O. 212, 134 N.E.2d 371. In other words, "[w]here the General Assembly by statute creates a **[***1197]** new right and at the same time prescribes remedies or penalties for its violation, the courts may not intervene and create an additional remedy." *Fletcher* at 154, 59 O.O. 212, 134 N.E.2d 371.

**[**P38]** More pertinently, we have held that *HN14*⊕courts that have general constitutional jurisdiction in mandamus, e.g., courts of appeals--see Section 3(B)(1)(b), Article IV, Ohio Constitution--patently and unambiguously lack jurisdiction over mandamus claims concerning matters that are vested in the exclusive original jurisdiction of another tribunal. See, e.g., *State ex rel. Geauga Cty. Budget Comm. v. Court of Appeals for Geauga Cty.* (1982), 1 Ohio St.3d 110, 1 OBR 143, 438 N.E.2d 428 (granting writ of prohibition to prevent court of appeals from exercising original jurisdiction over mandamus action because Board of Tax **[*255]** Appeals had exclusive jurisdiction to determine whether a budget commission had improperly refused to certify a levy); cf. *State ex rel. Weiss v. Indus. Comm.* (1992), 65 Ohio St. 3d 470, 476, 1992 Ohio 71, 605 N.E.2d 37 (noting that writ of mandamus will not issue to compel a classified employee's reinstatement or back pay until there is a final determination made in an appeal from the State Personnel Board of Review, a local civil-service commission, or other quasi-judicial authority that the employee was wrongfully excluded from employment).

**[**P39]** Similarly, we lack jurisdiction to consider relator's claims alleging violations of campaign-finance law that are within the exclusive original jurisdiction of the elections commission.

True Objective--Adequate Remedy

**[**P40]** Relator argues that we should exercise jurisdiction over its mandamus claim because relief through the complaint procedure in the elections commission would be inadequate. *HN15*⊕Mandamus is not available where there is an adequate remedy in the ordinary course of law. R.C. 2731.05; *State ex rel. Vaughn Industries, L.L.C. v. Ohio Dept. of Commerce,* 109 Ohio St.3d 482, 2006 Ohio 2994, 849 N.E.2d 31, P 18. In order to constitute an adequate remedy, the alternative must be complete, beneficial, and speedy. *State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas,* 106 Ohio St.3d 151, 2005 Ohio 4103, 832 N.E.2d 1206, P 19.

**[**P41]** Relator's contention fails because of our manifest lack of jurisdiction due to the exclusive

113, 1 OBR 143, 438 N.E.2d 428 (case in which the court concluded that the "availability of an adequate remedy at law is of no consequence in light of the [court of appeals'] unambiguous lack of jurisdiction" to proceed in mandamus because the subject matter was within the exclusive original jurisdiction of the Board of Tax Appeals).

[**P42]  Moreover, it is evident that the true objective of relator's mandamus action is to obtain disclosure of the Common Sense Ohio contributors' identities. See *State ex rel. United Automobile, Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.,* 108 Ohio St.3d 432, 2006 Ohio 1327, 844 N.E.2d 335, P 41-42 (court looks beyond terms of mandamus claim in order to determine real objects sought); see, also, *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92, P 21 (casting allegations in common pleas court case to sound in tort or contract is insufficient to confer jurisdiction on court when claim is one that the public utilities commission has exclusive jurisdiction to resolve).

[**P43]  Relator requests the writ to compel the Secretary to inform Common Sense 2006 that its electioneering-communications [***1198] disclosure statement is inaccurate [*256] and incomplete and to require Common Sense 2006 and Common Sense Ohio to timely file a complete and accurate statement or an amended statement. But the ultimate legal relief that relator seeks is the disclosure of the names of individual contributors of $ 200 or more to Common Sense Ohio.

[**P44]  It is readily apparent from their motion to quash subpoenas filed in this case that even if we were to order the requested writ to compel the Secretary to order them to file a corrected statement, Common Sense 2006 and Common Sense Ohio would not disclose the donors' names, because of their claim that R.C. 3517.1011 is unconstitutional both facially and as applied to them because it impinges on their First Amendment right of political speech. Cf. *McIntyre v. Ohio Elections Comm.* (1995), 514 U.S. 334, 348, 131 L.Ed.2d 426, 115 S.Ct. 1511 ("Insofar as the interest in informing the electorate means nothing more than the provision of additional information that may either buttress or undermine the argument in a document, we think the identity of the speaker is no different from other components of the document's content that the author is free to include or exclude. * * * The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit").

[**P45]  As relator itself acknowledges, if Common Sense Ohio and Common Sense 2006 refuse the Secretary's order for them to file a complete electioneering-communications disclosure statement, the Secretary would then have a duty to file a complaint against these entities in the elections commission. R.C. 3517.11(C)(1).

[**P46]  Under these circumstances, the requested writ would place relator in no better position than it would have been in had it simply filed a complaint against Common Sense Ohio and Common Sense 2006 with the elections commission itself pursuant to R.C. 3517.151(A) and 3517.153(A). Consequently, this remedy would be as complete, beneficial, and speedy as if we had granted the requested writ. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 450, 1996 Ohio 211, 663 N.E.2d 639 (mandamus would not lie to compel respondent agency director to report alleged criminal violations to law-enforcement officials because relator-employee could himself report these alleged violations to the same officials).

[**P47]  Therefore, assuming disclosure of contributor names is indeed relator's ultimate goal, its mandamus claim is not appropriate, because issuance of the writ will not achieve that goal. *HN16* It is well established that "'[m]andamus will not issue to compel a vain act.'" *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico,* 106 Ohio St.3d 481, 2005 Ohio 5061, 836 N.E.2d 529, P 17, quoting *State ex rel. Moore v. Malone,* 96 Ohio St.3d 417, 2002 Ohio 4821, 775 N.E.2d 812, P 38.

[*257]  Conclusion

[**P48]  *HN17* Because the General Assembly has vested the exclusive original jurisdiction over complaints concerning acts or failures to act under R.C. 3517.1011 and 3517.11 in the Ohio Elections Commission, courts lack jurisdiction to consider claims alleging such acts or failures to act, regardless whether the action is in declaratory judgment and injunction or in mandamus. In other words, the General Assembly has established the rights and duties as specified in these election provisions, and in these circumstances, it has further chosen to confer the Ohio Elections

Commission with the exclusive original quo warranto jurisdiction to determine whether there has been a violation of those provisions.

[**P49] This decision does not limit or otherwise affect this court's general constitutional and statutory jurisdiction in mandamus. We simply hold that based on the plain and unambiguous language of R.C. 3517.151 and 3517.153 and consistent with our precedent in *Taft-O-Connor '98,* 83 Ohio St.3d 487, 1998 Ohio 500, 700 N.E.2d 1232, we lack subject-matter jurisdiction to consider relator's claim alleging violations of R.C. 3517.1011 and 3517.11, and, therefore, we dismiss the cause.

[**P50] We refrain from addressing the merits of relator's claim in accordance with the court's general rule that *HN18*⚓"'we will not issue advisory opinions, [a rule that] applies equally to election cases.'" *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004 Ohio 5586, 817 N.E.2d 5, P 34, quoting *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003 Ohio 3629, 791 N.E.2d 452, P 22. This conclusion is also consistent with the "'cardinal principal of judicial restraint-if it is not necessary to decide more, it is necessary not to decide more.'" *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St. 3d 262, 2005 Ohio 6432, 838 N.E.2d 658, P34, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration* (C.A.D.C.2004), 360 U.S. App. D.C. 344, 362 F.3d 786, 799 (Roberts, J., concurring in part and in the judgment). The pending motions to quash and to remove this case from the expedited-election docket are moot.

Cause dismissed.

LUNDBERG STRATTON and LANZINGER, JJ., concur.

MOYER, C.J., and O'CONNOR, J., concur in judgment.

RESNICK, PFEIFER and O'DONNELL, JJ., dissent.

**DISSENT BY:** ALICE ROBINE RESNICK; O'DONNELL

**DISSENT**

**ALICE ROBINE RESNICK, J., dissenting.**

[**P51] I dissent from the majority's determination that the complaint in this mandamus case must be dismissed. Rather, the Ohio Elections Commission does [*258] not have exclusive jurisdiction over the allegations raised, and this court does have subject-matter jurisdiction to entertain this action.

[**P52] A majority of this court in *State ex rel. Taft-O'Connor '98 v. Franklin Cty. Court of Common Pleas* (1998), 83 Ohio St.3d 487, 488, 1998 Ohio 500, 700 N.E.2d 1232, did state within its brief opinion that "[t]he Ohio Elections Commission has exclusive jurisdiction over the claims of fraudulent and false statements raised * * * in the underlying action." However, this case is distinguishable from *Taft-O'Connor '98.*

[**P53] In *Taft-O'Connor '98,* this court issued a writ of prohibition to prevent *a trial court judge* from entertaining an action for declaratory judgment and injunction when the subject of the complaint filed in the trial court involved the content of a certain political television commercial. The specific action that was filed in the trial court was based on the allegation that the television ad was false and fraudulent. In granting the writ of prohibition, this court determined that under the circumstances, the allegation was so manifestly appropriate for determination by the Ohio Elections Commission that the trial court had no jurisdiction to consider it.

[**P54] This case, in contrast, does not involve any allegations regarding the truthfulness or falsity of a campaign ad. This case seeks to compel the Secretary of State to perform his statutory duties regarding the alleged failure to disclose the identity of contributors. Although the Ohio Elections Commission may be a possible alternative venue in which relator [***1200] may seek relief, that body does not have exclusive original jurisdiction over the allegations raised in the complaint before this court in this situation, for two main reasons.

**[\*\*P55]** Unlike the majority, I would first hold that the statutory scheme within R.C. Chapter 3517 does not vest exclusive jurisdiction in the elections commission to adjudicate relator's complaint. For that reason, I would proceed to reach a second conclusion, which is that under these facts the potential remedy available through the elections commission would not be an adequate one. Consequently, this court should retain jurisdiction over this case.

**[\*\*P56]** Nothing in the statutory scheme involving the elections commission expressly indicates that the elections commission has exclusive jurisdiction to handle all election complaints. See *Taft-O'Connor '98,* 83 Ohio St.3d at 489, 700 N.E.2d 1232 (Pfeifer, J., concurring in judgment only). In light of Section 2(B)(1)(b), Article IV of the Ohio Constitution, which provides for this court's original jurisdiction over writs of mandamus, we should not interpret statutes limiting this court's mandamus jurisdiction more broadly than necessary. The majority's determination that the elections commission has exclusive jurisdiction over the allegations of the complaint also implicates Section 16, Article I of the Ohio Constitution, which ensures that all injured parties "have remedy by due **[\*259]** course of law." See *Taft-O'Connor '98,* 83 Ohio St.3d at 489, 700 N.E.2d 1232 (Pfeifer, J., concurring in judgment only). The majority decision stretches the effect of the statutory scheme beyond its appropriate reach.

**[\*\*P57]** In order for a writ of mandamus to issue, three criteria must be met. The relator must establish a clear legal right to the relief requested, there must be a corresponding clear legal duty on the respondent to take the action sought by the relator, and the relator must not have an adequate remedy in the ordinary course of the law. See *State ex rel Union Cty. Veterans Serv. Comm. v. Parrott,* 108 Ohio St.3d 302, 2006 Ohio 92, 843 N.E.2d 750, P 8. The majority's finding that the Ohio Elections Commission has exclusive jurisdiction over the allegations in relator's complaint is tantamount to finding that the third criterion is not met in the circumstances of this case.

**[\*\*P58]** For a particular remedy to be adequate, it must be "complete, beneficial, and speedy." *State ex rel. Arnett v. Winemiller* (1997), 80 Ohio St.3d 255, 259, 1997 Ohio 320, 685 N.E.2d 1219. If a particular remedy is not sufficiently speedy or sufficiently complete, it is not adequate. Id.

**[\*\*P59]** "[T]he elections commission is in many circumstances unable to provide a meaningful remedy to a candidate who suffers substantial, irreparable injury as the result of election law violations, especially when the injury occurs close to the election date. * * *

**[\*\*P60]** "* * * [W]hen certain, substantial, and irreparable harm is imminent as the result of an election law violation, that jurisdiction may not provide a constitutionally adequate remedy." *Taft-O'Connor '98,* 83 Ohio St.3d at 490, 700 N.E.2d 1232 (Pfeifer, J., concurring in judgment only). Based on past experience, that observation rings especially true in this case.

**[\*\*P61]** In the 2000 election season, the group Citizens for a Strong Ohio ran questionable ads seeking to influence the results of the election and refused to reveal the identity of its donors. Complaints against the group were filed with the Ohio Elections Commission, but the group was able to extend the process of resolving the complaints for years through various maneuvers, including filing appeals. In *Ohio* **[\*\*\*1201]** *Elections Comm. v. Ohio Chamber of Commerce & Citizens for a Strong Ohio,* 158 Ohio App.3d 557, 2004 Ohio 5253, 817 N.E.2d 447, the Tenth District Court of Appeals upheld a ruling that Citizens for a Strong Ohio was required to reveal the donors who had funded the ads that ran in 2000. It was not until January 2005, more than four years after the 2000 election, that the group finally released its list of donors. For an article about the case and a link to the donors list, see http://www.cleveland.com/newslogs/plaindealer/index.ssf?/mtlogs/cleve_plaindealer/archives/2005_01 (entry for January 28, 2005).

**[\*\*P62]** If anything was definitively established by that experience, it was that the Ohio Elections Commission is absolutely unable to provide speedy and **[\*260]** effective relief in some situations. According to the majority, the complaint in this case involves a similar situation, is relegated to the elections commission, and may suffer the same fate. The elections commission will not be able to definitively resolve this case on the merits before the election. The remedy available through the commission would be so untimely that it comes close to being illusory.

**[\*\*P63]** For all the foregoing reasons, I would not dismiss the cause, but would retain jurisdiction over relator's mandamus claim. Further, I would deny the pending motions to quash, would deny

respondent's recent motion to remove this case from the expedited elections calendar, and would set a schedule for the submission of briefs and evidence.

PFEIFER, J., concurs in the foregoing opinion.

**O'DONNELL, J., dissenting.**

[**P64]  I write separately in dissent to state my view that the Ohio Democratic Party has properly filed its mandamus action in this court. Section 2(B)(1)(b), Article IV of the Ohio Constitution provides that the Supreme Court has original jurisdiction in mandamus actions, and Section 2(B)(3), Article IV specifies that "[n]o law shall be passed or rule made whereby any person shall be prevented from invoking the original jurisdiction of the supreme court."

[**P65]  To obtain a writ of mandamus, a party is required to demonstrate a clear legal right to the relief requested, a clear legal duty on the part of the governmental actor requested to perform the acts, and the lack of an adequate remedy in the ordinary course of law. *See State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas,* 106 Ohio St.3d 151, 2005 Ohio 4103, 832 N.E.2d 1206, P 13. In my view, the Ohio Democratic Party should have an opportunity to demonstrate its entitlement to a writ of mandamus and to establish its compliance with the standard for obtaining a writ.

[**P66]  Accordingly, I would afford the parties an opportunity to brief the issues before the court and consider the matter on its merits. Therefore, I dissent.

Source:  Legal > / . . . / > **Federal & State Cases, Combined** [i]
Terms:  **name(ohio democratic party and blackwell)**  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, January 18, 2008 - 5:42 PM EST

* Signal Legend:
● -  Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
(A) -  Citing Refs. With Analysis Available
(i) -  Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 **LexisNexis**®    About LexisNexis    Terms & Conditions    Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.